Record No. 13-2526

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

AUDIOLOGY DISTRIBUTION, LLC d/b/a HEARUSA,

*Appellant,*

v.

JILL K. HAWKINS, individually and d/b/a Hawkins Hearing, LLC,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE FOURTH CIRCUIT
————————————————————————

**APPELLANT'S OPENING BRIEF**
————————————————————————

Theodore A. Schroeder
LITTLER MENDELSON, P.C.
625 Liberty Avenue
26th Floor
Pittsburgh, PA  15222
412.201.7624
412.774.1959 (facsimile)
tschroeder@littler.com

*Attorney for Appellant*
*AUDIOLOGY DISTRIBUTION, LLC*
*d/b/a HEARUSA*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Local Rule 26.1, Appellant Audiology Distribution, LLC d/b/a HearUSA ("HearUSA"), by and through its undersigned counsel, states that HearUSA's parent companies are Siemens Hearing Instruments, Inc., Siemens Audilogische Technik GmbH, and Siemens AG, and that no publicly held corporation owns ten percent (10%) or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................i

TABLE OF CONTENTS............................................................... ii

TABLE OF AUTHORITIES ...........................................................iv

STATEMENT OF JURISDICTION...................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF THE CASE...................................................3

STATEMENT OF FACTS ...................................................5

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT ...................................................13

I.      STANDARD OF REVIEW ...................................................13

II.     THE DISTRICT COURT ERRED IN FINDING THAT HEARUSA
        FAILED TO ESTABLISH A LIKELIHOOD OF IRREPARABLE
        HARM ...................................................14

        A.      HearUSA Established A Likelihood Of Permanent Loss of
                Customers And Goodwill...............................17

        B.      There Is No Evidence That HearUSA's Harm May Be Subject
                To Mathematical Calculation ...........................22

III.    THE DISTRICT COURT ERRED IN DENYING HEARUSA'S
        MOTION FOR PRELIMINARY INJUNCTION .......................23

        A.      The Injury To HearUSA Outweighs Any Potential Harm To
                Hawkins...................................................23

        B.      An Injunction Would Not Be Adverse To The Public Interest..........24

CONCLUSION ...................................................26

REQUEST FOR ORAL ARGUMENT ...................................................27

CERTIFICATE OF COMPLIANCE......................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*,
    550 F.2d 189 (4th Cir. 1977) ................................................................17

*Campbell Alliance Group, Inc. v. Dandekar*,
    2014 U.S. Dist. LEXIS 1420 (E.D.N.C. Jan. 7, 2014) ................................18, 24

*Centro Tepeyac v. Montgomery County*,
    722 F.3d 184 (4th Cir. 2013) .......................................................13, 14

*Cook v. Robinson*,
    2011 U.S. Dist. LEXIS 23401 (N.D. W. Va. Mar. 8, 2011) ..........................25

*Dewhurst v. Century Aluminum Co.*,
    649 F.3d 287, 290 (4th Cir. 2011) ...............................................13

*JTH Tax, Inc. v. Donofrio*,
    Civ. No. 06-cv-47, 2006 U.S. Dist. LEXIS 73692 (E.D. Va. 2006) ................24

*Ledo Pizza Sys. v. Singh*,
    2013 U.S. Dist. LEXIS 153110 (D. Md. Oct. 24, 2013) ...................................24

*Merrill Lynch v. Coffindaffer*,
    183 F. Supp. 2d 842, 850 (N.D. W. Va. 2000) ...........................................17, 25

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
    756 F.2d 1048 (4th Cir. 1985) ......................................................17

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating
Co.*,
    22 F.3d 546 (4th Cir. 1994) ...............................................17, 18, 19

*Newark Morning Ledger Co. v. United States*,
    507 U.S. 546 (U.S. 1993).................................................................20

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) .........................................................13

*Pro-Concepts, LLC .v. Resh*,
Civ. No. 2:12-cv-573, 2013 U.S. Dist. LEXIS 151714 (E.D. Va. Oct. 22, 2013) ..................................................................................18, 19

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*,
442 Fed. Appx. 776 (4th Cir. 2011)............................................passim

*TBB Global Logistics, Inc. v. ICAT Logistics, Inc.*,
2013 U.S. Dist. LEXIS 73509 (D. Md. May 23, 2013)....................................18

*The Real Truth About Obama, Inc. v. Federal Election Commission*,
575 F.3d 342 (4th Cir. 2009) ......................................................passim

*UBS PaineWebber, Inc. v. Aiken*,
197 F. Supp. 2d 436 (W.D.N.C. 2002)..............................................25

*W. Industries-North, LLC, v. Lessard et al.*,
Civ. No. 12-cv-0-177, 2012 U.S. Dist. LEXIS 38697 (E.D. Va. March 21, 2012) ..............................................................................18

*Winter v. NRDC, Inc.*,
129 S. Ct. 365, 374 (U.S. 2008)........................................13, 19, 25

## STATUTES

28 U.S.C. § 1292(a)(1)................................................................1

28 U.S.C. § 1332................................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(3)................................................................22

## <u>STATEMENT OF JURISDICTION</u>

The United States District court for the Northern District of West Virginia had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Appellant Audiology Distribution, LLC d/b/a HearUSA ("HearUSA") and Appellee Jill K. Hawkins d/b/a Hawkins Hearing, LLC ("Hawkins") are citizens of different states and amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

By order dated December 10, 2013, the district court denied HearUSA's Motion for Preliminary Injunction. HearUSA filed a timely Notice of Appeal on December 19, 2013. Pursuant to 28 U.S.C. § 1292(a)(1), this Court has jurisdiction to review the interlocutory order of the district court denying HearUSA's Motion for Preliminary Injunction.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.       Did the district court err when it found that Appellant HearUSA failed to establish a likelihood of irreparable harm, where Appellee Hawkins was violating an enforceable covenant not-to-compete and already had taken away twenty (20) of HearUSA's customers?

2.       In light of its error on the issue of irreparable harm, did the district court abuse its discretion by failing to enter a preliminary injunction in HearUSA's favor?

## STATEMENT OF THE CASE

This action arises out of Appellee Jill K. Hawkins' ("Hawkins") breach of a Covenant Not-to-Compete Agreement ("Covenant Not-to-Compete") she executed with Appellant Audiology Distribution, LLC d/b/a HearUSA ("HearUSA"), her former employer.  On November 6, 2013, HearUSA commenced this action by filing a Verified Complaint ("Complaint") against Hawkins in the United States District Court for the Northern District of West Virginia.  HearUSA's three-count Complaint asserts claims against Hawkins for breach of the Covenant-Not-to-Compete, breach of the duty of loyalty, and tortious interference with prospective contractual relations.  (Appendix "App." 1-18).  On that same date, HearUSA also filed a Motion for Temporary Restraining Order, Preliminary Injunctive Relief, and a Preliminary Injunction Hearing Date seeking to, *inter alia*: enforce Hawkins' contractual Covenant-Not-to-Compete; stop Hawkins' efforts to unlawfully compete with HearUSA; and protect its valuable customer relationships and goodwill. (App. 25-28).

On November 12, 2013, the parties appeared for an evidentiary hearing on the Motion for Temporary Restraining Order.  After hearing the testimony and the argument from counsel and considering the equitable factors set forth in *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009), the district court granted the plaintiff's Motion for a Temporary

Restraining Order. (App. 89-91). Significantly, the district court held that HearUSA had demonstrated a likelihood of success on the merits and that HearUSA was likely to suffer irreparable harm in the absence of preliminary relief because Hawkins had taken and/or serviced former HearUSA customers. (App. 89-90). On November 13, 2013, the district court entered an Order Confirming Pronounced Order of the Court Granting HearUSA's Motion for a Temporary Restraining Order, Setting Bond, and Scheduling Hearing on Motion for Preliminary Injunction. (App. 29-33).

On December 10, 2013, the district court held the hearing on HearUSA's Motion for Preliminary Injunction. At the conclusion of the hearing, the district court denied HearUSA's Motion for Preliminary Injunction, without prejudice. In doing so, the district court ruled that the Covenant-Not-to-Compete is a valid and enforceable instrument and that HearUSA is likely to succeed on its claim for breach of contract. (App. 40-44, 119-120). On the issue of irreparable harm, however, the district court held that HearUSA had failed to make a clear showing that it was likely to suffer irreparable harm absent preliminary relief, as required by *The Real Truth About Obama, Inc.*, 575 F.3d at 347. (App. 44-46, 120-123). On December 16, 2013, the Court entered an Order Confirming the Pronounced Order of the Court Denying Without Prejudice Plaintiff's Motion for Preliminary Injunction. (App. 34-47).

## STATEMENT OF FACTS
## <u>RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW</u>

## I.    THE PARTIES

HearUSA is a recognized leader in the hearing care industry.  (App. 3).
Through its Hearing Care Network of nearly 2,000 independently practicing
audiologists and hearing care professionals, and its more than 180 company owned
hearing centers, HearUSA administers hearing benefits and provides related
products and services to both third party and self-referred clients.  (App. 3).
Because HearUSA's audiologists and hearing-aid dispensers are the only
employees capable of performing these functions, these employees generate most
of the company's revenue and are vital to its continued operation and success.
(App. 52-53).  Accordingly, HearUSA requires all new audiologists to execute
covenant-not-to-compete agreements as a condition of employment. (App. 81-82).

Hawkins is an audiologist licensed to practice in the state of West Virginia.
She has her masters and doctorate degrees in audiology.  (App. 99-100).   In 2004,
Hawkins and a colleague, Sara Antry ("Antry"), opened TriState Audiology, LLC
("TriState"), a West Virginia limited liability corporation engaged in the business
of providing hearing care services and related products to customers and patients.
(App. 100).   Initially, Hawkins was a forty-nine percent (49%) shareholder in
TriState; however, in October of 2007, Antry acquired 100% ownership of
TriState.  (App. 100-101).  Subsequent to Antry's acquisition, Hawkins remained

at TriState as an employee and the main audiologist at TriState's office located in

Weirton, West Virginia. (App. 101-102).

## II.    HEARUSA'S PURCHASE OF TRISTATE AUDIOLOGY, LLC

As part of its marketing and growth strategy, HearUSA sought to enter the

West Virginia market by acquiring the assets of TriState.  (App. 50-53).  TriState

had developed an extensive customer base in northern West Virginia and the

surrounding tri-state region through its two hearing care centers located in Glen

Dale, West Virginia, and Weirton, West Virginia.  (App. 3).  Jill Hawkins was the

main audiologist at the Weirton office and TriState's principal revenue producer.

(App. 101-102, 154).   Hawkins had been with TriState for over seven (7) years,

and during this lengthy time period, had developed and maintained significant

relationships with TriState's customers and patients. (App. 52-53, 60-61, 100-103).

As such, Hawkins' employment with HearUSA following the acquisition was a

critical part of the transaction.  (App. 52-53).

In anticipation of the acquisition, in June of 2012, HearUSA's Vice

President of Business Development, Richard Whitman ("Whitman"), met with

Hawkins and two other TriState employees at HearUSA's corporate offices in

Florida. (App. 54, 104-105).  At this meeting, Whitman reviewed with Hawkins

the terms under which HearUSA would agree to employ her, including the

Covenant-Not-to-Compete that she would be required to execute as a condition of

her employment. (App. 54, 104-106).   On June 22, 2012, Whitman emailed Hawkins a copy of the Covenant-Not-to-Compete for her review. (App. 55, 125-126).

On September 27, 2012, HearUSA and TriState entered into an Asset Purchase Agreement, whereby HearUSA acquired substantially all of TriState's assets, including, but not limited to: TriState's trade secrets, confidential information, customer lists, patient files, trade names, and goodwill. (App. 3, 79, 154).  On that same date, HearUSA sent Hawkins a formal offer of employment.  (App. 56, 127-128).

## III.  HAWKINS' EMPLOYMENT WITH HEARUSA

On Friday, September 28, 2012, Hawkins commenced employment with HearUSA.  (App. 107-108).  The following Monday, October 1, 2012, Hawkins signed her Offer Letter and Covenant Not-to-Compete, confirming the terms of employment that had been communicated to her several months earlier.  (App. 54-58, 106-109, 127-129).  As a condition to, and in consideration of, her employment with HearUSA, Hawkins signed the Covenant Not-to-Compete.  (App. 57, 108, 129) The Covenant-Not-to-Compete provides, in pertinent part:

> For and in consideration of employment with the Company Employee hereby covenants and agrees that for a period of **twelve months** following the termination of employment for Audiology Distribution, Employee shall not, directly or indirectly, compete with Audiology Distribution within a **10** mile radius wherein Employee performed services under its employment with the Company for or on behalf of

7

Audiology Distribution, and that this non-compete covenant
specifically includes, but is not limited to, contacting the customers,
clients and prospective customers and clients of Audiology
Distribution.

(App. 108, 129). Following HearUSA's acquisition of TriState, Hawkins
continued to work out of the Weirton office. As the main audiologist at this
location, Hawkins was responsible for, among other things, developing and
maintaining customer and patient relationships for and on behalf of HearUSA, and
marketing and selling HearUSA's hearing aids and related products to hearing
impaired customers. (App. 4).

## IV.   HAWKINS' UNFAIR COMPETITION

On or about September 27, 2013, Hawkins resigned her employment with
HearUSA, effective October 11, 2013. (App. 113, 130). After Hawkins
announced her resignation, but prior to her last day of employment, Whitman
reminded Hawkins of her non-compete obligations; specifically, he reminded
Hawkins that she could not compete within ten (10) miles of the Weirton office.
(App. 59-60, 113-114). Unbeknownst to HearUSA, Hawkins had spent the months
leading up to her resignation planning and preparing to leave HearUSA to start her
own competing business, Hawkins Hearing, LLC ("Hawkins Hearing"). While still
employed by HearUSA, Hawkins, in disregard of her contractual and common law
obligations, engaged in conduct and activities designed to further her own business
interests, to the detriment of HearUSA. Specifically, on behalf of Hawkins

Hearing, Hawkins obtained a certificate of limited liability company, a business loan, and a lease for a property that was located **less than three (3) miles away from HearUSA's Weirton office**.   (App. 110-113, 131-152, 157-168).  Hawkins also informed HearUSA's customers and patients that she would be leaving to open her own business and, upon request, provided them with copies of their HearUSA patient records. (App. 115-116).

After leaving HearUSA, Hawkins' unfair competition continued. Indeed, Hawkins has **admitted** to engaging in the following conduct in direct violation of the Covenant-Not-To-Compete:

- Between October 11, 2013, and November 7, 2013, Hawkins received telephone calls from approximately twenty-five (25) HearUSA patients at her home, inquiring as to her whereabouts.  In response, Hawkins informed those patients of her plans to open Hawkins Hearing.  (App. 115-116)

- On or about November 7, 2013, Hawkins began seeing patients at Hawkins Hearing.  (App. 115).

- Between November 7, 2013, and November 18, 2013, the date in which the Temporary Restraining Order became effective, Hawkins had twenty-five (25) appointments with twenty-one (21) different patients. Twenty (20) of these patients were prior patients

of HearUSA. (App. 117, 169-177).

- Between November 7, 2013, and November 18, 2013, Hawkins saw one (1) new patient who was a referral from someone who was familiar with her new business. (App. 117, 169-177).

- Additionally, during that twelve (12) day time period in which Hawkins was permitted to operate in violation for her Covenant-Not-to-Compete, several other former HearUSA customers stopped by Hawkins Hearing inquiring into her whereabouts. (App. 118).

On December 10, 2013, the district court denied HearUSA's Motion for Preliminary Injunction, without prejudice. To date, Hawkins continues to operate Hawkins Hearing in violation of the Covenant-Not-to-Compete.

## SUMMARY OF THE ARGUMENT

The district court's denial of HearUSA's Motion for Preliminary Injunction was predicated solely upon its determination that HearUSA demonstrated only a possibility of likely irreparable harm. Specifically, the district court stated that although Hawkins had serviced and/or taken away at least twenty (20) of HearUSA's patients and received approximately twenty-five (25) telephone calls from HearUSA patients inquiring into her whereabouts, HearUSA could not establish irreparable harm because it did not provide the Court with sufficient evidence of the financial impact that Hawkins' actions have caused as to its business. Further, the district court noted that it was not convinced that HearUSA's harm is not subject to mathematical calculation.

The district court's decision is contrary to Fourth Circuit authority establishing the standard for demonstrating irreparable harm. Specifically, the district court's ruling ignores the post-*Winter* line of cases in this circuit, including *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 Fed. Appx. 776, 785 (4th Cir. 2011), which find the irreparable harm prong to be satisfied when the failure to grant preliminary relief creates the likelihood of permanent loss of customers to a competitor or the loss of goodwill. Because the district court committed an error of law in finding that HearUSA failed to establish a likelihood of irreparable harm absent preliminary relief, its holding with respect to the

balance of equities and public interest likewise misapprehend the applicable law. Accordingly, HearUSA respectfully requests that this Court find that the district court abused its discretion, reverse the district court's Pronounced Order Denying Without Prejudice Plaintiff's Motion for a Preliminary Injunction, and remand the case to the district court with a direction to issue a preliminary injunction. Given that HearUSA continues to suffer irreparable harm and that the Covenant Not-to-Compete will expire on October 11, 2014, HearUSA requests that the Court issue its decision as expeditiously as possible.

# ARGUMENT

## I.     STANDARD OF REVIEW

In order to obtain a preliminary injunction, a plaintiff must establish the following four factors: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citing *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (U.S. 2008)).  The decision to issue or deny a preliminary injunction is committed to the sound discretion of the trial court. *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013).  That decision will not be disturbed on appeal unless the record shows an abuse of that discretion, regardless of whether the appellate court would, in the first instance, have decided the matter differently.  *Id*.  In conducting its assessment, the court of appeals reviews the district court's factual findings for clear error and reviews its legal conclusions de novo.  *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citing *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011)); *see also Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 Fed. Appx. 776, 784 (4th Cir. 2011) (noting that the court reviews a finding of irreparable harm for clear error)).  The court of appeals may find an abuse of discretion if the district court applied an incorrect preliminary injunction standard,

13

rested its decision on a clearly erroneous finding of a material fact, or misapprehended the law with respect to underlying issues in litigation. *Centro Tepeyac*, 722 F.3d at 188.

## II. THE DISTRICT COURT ERRED IN FINDING THAT HEARUSA FAILED TO ESTABLISH A LIKELIHOOD OF IRREPARABLE HARM.

The district court properly granted HearUSA's Motion for a Temporary Restraining Order. At the evidentiary hearing on the Motion for Temporary Restraining Order, HearUSA presented testimony from Vice President of Business Development, Richard Whitman. (App. 50-82, 154-155). Whitman testified to, among other things, the facts surrounding HearUSA's acquisition of TriState and Hawkins' execution of the Covenant-Not-to-Compete. (App. 50-58). Whitman also explained the significance of non-compete agreements in hearing care industry, given that customer goodwill tends to attach to the individual service provider and/or audiologist rather than the business, and that patients tend to follow their service provider, regardless of where they work. (App. 52-53, 60-61). Finally, Whitman testified about the loss of customers and goodwill that HearUSA would continue to experience if Hawkins was allowed to continue to operate Hawkins Hearing in violation of the Covenant-Not-to-Compete. (App. 60-61). Following Whitman's testimony, Appellee agreed to stipulate to the fact that: 1) Hawkins was operating a competing business within ten (10) miles of

HearUSA's Weirton office and 2) former HearUSA customers have left HearUSA and are now patronizing Hawkins Hearing. (App. 85-86). Hawkins did not present any evidence at the hearing. Rather, Appellee argued that the Covenant-Not-to-Compete was unenforceable because Hawkins executed the written instrument three (3) days after commencing her employment with HearUSA. (App. 87-88, 155).

After hearing the testimony and the argument from counsel and considering the equitable factors set forth in *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009), the district court **granted** the plaintiff's Motion for a Temporary Restraining Order. (App. 89-91). Significantly, the district court held that HearUSA had demonstrated a likelihood of success on the merits and that HearUSA was likely to suffer irreparable harm in the absence of preliminary relief because Hawkins had taken and/or serviced former HearUSA customers. (App. 89-91).

On December 10, 2013, the district court held the hearing on HearUSA's Motion for Preliminary Injunction. At the hearing, Richard Whitman's testimony from the hearing on the Motion for Temporary Restraining Order was admitted as part of the record. (App. 97-98). HearUSA also presented additional evidence including, but not limited to, the testimony of Hawkins, who admitted that during the short time-period in which she had been permitted to operate Hawkins Hearing

in violation of the Covenant-Not-to-Compete she had serviced at least twenty (20) former HearUSA patients, and received calls from another  twenty-five (25) HearUSA patients.  (App. 115-118, 169-177).

Despite the fact that the standards for granting temporary restraining orders and preliminary injunctions are identical, the district court, in an abrupt turnabout, denied HearUSA's Motion for Preliminary Injunction.  In doing so, the  district court ruled reaffirmed its initial ruling that the Covenant-Not-to-Compete is a valid and enforceable instrument and that HearUSA is likely to succeed on its claim for breach of contract.  (App. 119-120).  On the issue of irreparable harm, however, the district court held that HearUSA had failed to make a clear showing that it was likely to suffer irreparable harm absent preliminary relief, as required by *The Real Truth About Obama, Inc.*, and noted that it was not convinced that HearUSA's harm "is not subject to mathematical calculation." (App. 44-46, 120-161).

In denying HearUSA's Motion for Preliminary Injunction the district court misapprehended the law in this circuit concerning irreparable harm and discounted probative evidence on the record.  Accordingly, the district court's Order should be reversed.

### A.    HearUSA Established A Likelihood Of Permanent Loss of Customers And Goodwill.

Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate. *Multi-Channel TV Cable Co. v.*

*Charlottesville Quality Cable Operating Co*., 22 F.3d 546, 551 (4th Cir. 1994). Therefore, when the record indicates that a plaintiff's loss is a matter of simple mathematic calculation, a plaintiff fails to establish irreparable injury for preliminary injunction purposes. *Id*. at 552. Courts in the Fourth Circuit have consistently held that monetary damages are either difficult to ascertain or are inadequate in circumstances involving the loss of customers and general goodwill. *See e.g. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc*., 550 F.2d 189 (4th Cir. 1977) (holding that harm to goodwill to be incalculable); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (holding that the loss of customers constituted irreparable, non-compensable harm). Accordingly, this Court in *Multi-Channel* held that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel*, 22 F.3d at 551; s*ee also Merrill Lynch v. Coffindaffer*, 183 F. Supp. 2d 842, 850 (N.D. W. Va. 2000) (noting that "[i]n addition to loss of actual customers, the loss of goodwill is intangible and also supports irreparable harm."); *W. Industries-North, LLC, v. Lessard et al*., Civ. No. 12-cv-0-177, 2012 U.S. Dist. LEXIS 38697 (E.D. Va.  March 21, 2012) (noting that Fourth Circuit case law holds that harm to customer goodwill and loss of future business are sufficient for the purposes of demonstrating irreparable harm).

17

In *Winter v. NRDC Inc.*, 555 U.S. 7, 20 (2008), the Supreme Court rejected the "possibility" of irreparable harm standard as too lenient, requiring instead that a plaintiff show "likely" irreparable injury.  *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 Fed. Appx. 776, 785 (4th Cir. 2011); *see also The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009).  Importantly, however, the *Winter* decision did not displace this Court's ruling in *Multi-Channel*.  Rather, courts analyzing the irreparable harm prong post-*Winter* now "often require specific evidence concerning the actual or potential loss of customers or goodwill before finding irreparable injury."  *Pro-Concepts, LLC .v. Resh*, Civ. No. 2:12-cv-573, 2013 U.S. Dist. LEXIS 151714, *61 (E.D. Va. Oct. 22, 2013); *see also TBB Global Logistics, Inc. v. ICAT Logistics, Inc.*, 2013 U.S. Dist. LEXIS 73509, *16 (D. Md. May 23, 2013) ("Under Winter, [plaintiff] must establish the likely permanent loss of customers to show irreparable harm."); *Campbell Alliance Group, Inc. v. Dandekar*, 2014 U.S. Dist. LEXIS 1420, *10 (E.D.N.C. Jan. 7, 2014) ("When the failure to grant preliminary relief creates the [likelihood] of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."). "This is not to say that [plaintiff] is required to establish specific losses, but rather that [plaintiff] must present sufficient evidence for the Court to find that it is likely that such losses have occurred or will occur absent preliminary injunctive relief."  *Pro-Concepts,*

18

*LLC*, 2013 U.S. Dist. LEXIS 151714 at *61.

In *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, plaintiff Signature sought to permanently enjoin Landow from engaging in conduct in violation of its contractual obligations. *Signature Flight Support Corp.,* 698 F. Supp. 2d 602 (E.D. Va. 2010). Relying on this Court's decision in *Multi-Channel*, the United States District Court for the Eastern District of Virginia held that Signature established irreparable harm because:

> Landow's violation of its contractual duties caused Signature to lose some of its customer base and goodwill. If the injunction is not granted, Signature will continue to lose its customers, possibly lose its opportunity to attract new customers, and goodwill in the industry. Because such past and future damages are difficult to measure, the Court finds that Plaintiff has met its burden with respect to the first factor. Secondly, monetary damage in this case is inadequate because it would not prevent the future injury that would be suffered by Plaintiff without the injunction. It would be neither adequate or efficient to have to require Plaintiff to file a breach of contract in the future to be able to recover for its loss.

*Signature Flight Support Corp.*, 698 F. Supp. 2d 602, 624 (E.D. Va. 2010). On appeal, Landow argued that *Winter* undermined the *Multi-Channel* decision. This Court disagreed. *Signature Flight Support Corp.*, 442 Fed. Appx. at 785. In affirming the district court's order granting Signature's permanent injunction, this Court of Appeals held that Signature had evidenced likely irreparable injury because it demonstrated "**not only a possibility of harm, but harm in fact**" in showing that Landow's violation of its contractual duties caused it to lose some of

19

its customer base and goodwill.  *Id*. at 785 (emphasis added).

Here, as in *Signature Flight Support Corp*., the record shows that HearUSA demonstrated not just a possibility or likeliness of irreparable harm as a result of Hawkins' violation of the Covenant-Not-to-Compete, but **actual** harm in the form of the lost customers, referrals and goodwill.[1]  (App. 60-61, 115-118, 169-177).  Additionally, the evidence demonstrates a likelihood that HearUSA will continue to lose customers, opportunities to attract new customers and goodwill absent preliminary relief.  (App. 60-61, 115-118, 169-177).  At the evidentiary hearing on the Motion for Preliminary Injunction, however, the district court found such harm insufficient.  Ignoring both 1) the fact that monetary damages are either difficult to ascertain or are inadequate in circumstances involving the loss of customers and goodwill and 2) the post-*Winter* line of cases, including *Signature Flight Support Corp*., which find the irreparable harm prong to be satisfied when the failure to grant preliminary relief creates the likelihood of permanent loss of customers to a competitor or the loss of goodwill, the district court erroneously held that HearUSA was required to show evidence of actual financial harm:

> [n]ow, we do have some testimony that Ms. Hawkins left employment.  That's not disputed.  And that thereafter a number of the defendant's former patients contacted her…Now, there is testimony that some 25 people called and that there are a number of them, perhaps all of them, were former patients of plaintiff.

---

[1] *See Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (U.S. 1993), defining goodwill as the "expectancy of continued patronage."

20

**There's…been no effort to quantify a loss of profit of damage, either profit to…the defendant or loss to the plaintiff."**

(App. 122) (emphasis added).   In its Memorandum Order and Opinion, the district court similarly discounted HearUSA's evidence concerning its actual loss of customers and goodwill and likelihood of future losses of business and goodwill, requiring instead a showing of financial impact:

> The plaintiff failed to provide this Court with sufficient evidence of the financial impact that the defendant's actions have caused as to its business, such as a decrease in patient appointments or sales. While plaintiff has shown that the defendant has seen at least 20 patients at her new location which were prior patients of HearUSA and received approximately 25 calls from prior patients of HearUSA asking about her whereabouts, the Court does not find that such evidence is sufficient to provide a clear showing of irreparable harm.

 (App. 45). In so holding, the district court abused its discretion and committed an error of law.   The district court's ruling fails to comport with both established Fourth Circuit authority and its prior decision on HearUSA's Motion for Temporary Restraining Order where it found that HearUSA was likely to suffer irreparable harm in the absence of preliminary relief because Hawkins had taken and/or serviced former HearUSA customers. (App. 90).  Instead, the district court held HearUSA to a standard for proving irreparable harm which has never been endorsed by this Court, and erred by failing to find the existence of irreparable harm given HearUSA's swift and significant loss of customers and goodwill.  For these reasons, the district court's holding on the issue of irreparable harm must be

reversed.

### B.    There Is No Evidence That HearUSA's Harm May Be Subject To Mathematical Calculation.

In denying HearUSA's Motion for Preliminary Injunction, the district court also noted that HearUSA's harm "may be mathematically calculated," yet cited no evidence in the record before it for this proposition. (App. 45-46). Rather, the district court relied solely on fact that HearUSA's Complaint – which in addition to breach of the Covenant-Not-to-Compete asserts claims for breach of the duty of loyalty and tortious interference with prospective contractual relations – requests compensatory damages related to each of its claims. (App. 45-46). This finding misapprehends the case law cited *supra*, concerning irreparable harm and the loss of customers and general goodwill, and the Federal Rules of Civil Procedure which allow a plaintiff to request alternative types of relief. *See* Fed. R. Civ. P. 8(a)(3).

Based on the foregoing, it is clear the district court committed an error in finding that HearUSA failed to make a showing that is likely to be irreparably harmed absent preliminary relief. Therefore, the district court's Pronounced Order Denying Without Prejudice Plaintiff's Motion for a Preliminary Injunction should be reversed.

**III. THE DISTRICT COURT ERRED IN DENYING HEARUSA'S MOTION FOR PRELIMINARY INJUNCTION.**

The district court held that HearUSA was likely to succeed on the merits of its claim for breach of the Covenant-Not-to-Compete, but found that HearUSA failed to establish the remaining prongs due to its determination on the issue of irreparable harm. (App. 46-47). Because the District court committed an error of law in finding that HearUSA failed to establish a likelihood of irreparable harm absent preliminary relief, its holding with respect to the balance of equities and public interest likewise misapprehend the applicable law.

**A. The Injury To HearUSA Outweighs Any Potential Harm To Hawkins**

In determining that the balance of equities failed to favor HearUSA, the district court, simply stated that "plaintiff failed to show that it will suffer irreparable harm in the absence of a preliminary injunction; therefore, the balance of equities does not favor the plaintiff." (App. 46). Because this determination was based upon the erroneous conclusion that HearUSA failed to establish likely irreparable injury, the district court's holding must be reversed.

The balance of equities clearly weighs in favor of HearUSA because granting the preliminary injunction merely forces Hawkins to abide by her contractual obligations. *See Signature Flight Support Corp.*, 442 Fed. Appx. at 785 (finding that the balance of hardships favored plaintiff because the injunction

merely restored the contractual rights of the parties); *Campbell Alliance Group, Inc.*, 2014 U.S. Dist. LEXIS 1420 at 11-12 (E.D.N.C. Jan. 7, 2014) (finding that the balance of equities favored plaintiff where a temporary restraining order would only require defendants to comply with the post-employment restrictions to which they previously agreed). Moreover, there is no evidence that Hawkins will suffer irreparable harm as a result of this Court's issuance of a preliminary injunction, as she is not prohibited from working in the same industry or opening a competing business, so long as she does so outside the ten (10) mile radius of the Weirton office. *See JTH Tax, Inc. v. Donofrio*, Civ. No. 06-cv-47, 2006 U.S. Dist. LEXIS 73692 *14 (E.D. Va. 2006) (finding no harm to defendant where the injunction only enforced defendant's contractual non-competition and non-solicitation obligations and defendant was free to compete anywhere outside the twenty five (25) mile boundary of the covenant not to compete). Furthermore, the self-inflicted nature of any harm suffered by Hawkins weighs heavily in favor of granting injunctive relief. *See e.g. Ledo Pizza Sys. v. Singh*, 2013 U.S. Dist. LEXIS 153110 (D. Md. Oct. 24, 2013).

### B.    An Injunction Would Not Be Adverse To The Public Interest.

Similarly, the district court found that HearUSA failed to establish that an injunction would be in the public interest because "the public…has an interest in not imposing injunctive relief where there has not been a sufficient showing of the

24

likelihood of irreparable harm." (App. 46-47). Inasmuch as this determination was predicated on the district court's error on the issue of irreparable harm, this holding too must be reversed. Indeed, granting HearUSA's Motion Preliminary Injunction will serve the public interest in this matter by enforcing valid contractual provisions and "will further prevent defendant[] from violating a cardinal equity rule that one should not benefit from his or her own wrongdoing." *Merrill Lynch*, 183 F. Supp. 2d 842, 852 (N.D. W.Va. 2000); *see also UBS PaineWebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 448 (W.D.N.C. 2002) ("the public has no interest in destroying contracts . . . and encouraging unethical business behavior."); *Cook v. Robinson*, 2011 U.S. Dist. LEXIS 23401 (N.D. W. Va. Mar. 8, 2011) ("[I]t is also in the public's interest to preserve the status quo and protect the sanctity of contracts."). Conversely, to deny injunctive relief in this case would cast doubt on the integrity of contractual agreements and chill the willingness of parties to enter into covenants not to compete. *Merrill Lynch*, 183 F. Supp. 2d at 852.

As explained above, HearUSA can readily establish that each of the four *Winter* factors compels the issuance of immediate injunctive relief. Accordingly, the district court's December 10, 2013 Pronounced Order Denying Without Prejudice Plaintiff's Motion for a Preliminary Injunction should be reversed and an injunction should issue.

## CONCLUSION

For the foregoing reasons, Appellant Audiology Distribution, LLC d/b/a HearUSA respectfully requests that this Court reverse the district court's December 10, 2013, Pronounced Order Denying Without Prejudice Plaintiff's Motion for a Preliminary Injunction and remand the case to the district court with instructions to issue a preliminary injunction. Given that HearUSA continues to suffer irreparable harm and that the Covenant Not-to-Compete will expire on October 11, 2014, HearUSA requests that the Court issue its decision as expeditiously as possible.

Respectfully submitted,

s/ Theodore A. Schroeder

Theodore A. Schroeder (9803)
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7624
tschroeder@littler.com

*Counsel for Appellant Audiology
Distribution, LLC d/b/a HearUSA*

Dated:  January 29, 2014

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Local Rule 34(a), Appellant Audiology Distribution, LLC d/b/a HearUSA ("HearUSA") states that it is willing to appear for oral argument should the Court deem it necessary to its full consideration of the issues raised in this appeal. Given the irreparable harm that HearUSA continues to suffer in the absence of its requested preliminary relief, however, HearUSA also requests that the Court issue its decision as expeditiously as possible.

*s/ Theodore A. Schroeder*
Theodore A. Schroeder (9803)
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
412.201.7624
tschroeder@littler.com

*Counsel for Appellant Audiology Distribution, LLC d/b/a HearUSA*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,263 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point, Times New Roman font.

*s/ Theodore A. Schroeder*
_____
Theodore A. Schroeder (9803)
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7624
tschroeder@littler.com

*Counsel for Appellant Audiology Distribution, LLC d/b/a HearUSA*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of January, 2014, a copy of the

foregoing **Appellant's Opening Brief** was filed using the United States Court of

Appeals for the Fourth Circuit's ECF system, through which this document is

available for viewing and downloading, causing a notice of electronic filing to be

served upon the following counsel for Appellee:

> Raymond A. Hinerman, Esq.
> Michael A. Adams, Esq.
> HINERMAN & ASSOCIATES, PLLC
> P.O. BOX 2465
> Weirton, WV  26062
> rah@hinermanlaw.com
> maa@hinermanlaw.com

> *s/ Theodore A. Schroeder*
> _____
> Theodore A. Schroeder (9803)
> LITTLER MENDELSON, P.C.
> 625 Liberty Avenue, 26th Floor
> Pittsburgh, PA  15222
> 412.201.7624
> tschroeder@littler.com
>
> *Counsel for Appellant Audiology*
> *Distribution, LLC d/b/a HearUSA*